## Case No. 16,487.
### UNITED STATES v. THOMPSON.
[Gilp. 614.] 1

District Court, E. D. Pennsylvania.   March 15, 1836.

BONDS—JOINT AND SEVERAL OBLIGORS—RELEASE—REVIVOR OF JUDGMENTS—DEFENSES—RELEASE OF DEBTOR OF UNITED STATES.

1. Where two persons are bound jointly, or jointly and severally in an obligation, the release of one of them will discharge the other.

2. Where a separate judgment has been rendered against one obligor on a joint and several obligation, and a scire facias is issued to revive the judgment, the defendant cannot avail himself of a release given to his co-obligor subsequent to the original judgment.

3. Where a scire facias is issued to revive a judgment, the defendant cannot avail himself of matters of defence which occurred previous to the original judgment.

[Cited in Loeler v. Moore, 20 D. C. 9.]

4. Where a joint judgment has been rendered against two defendants, a release of one of them subsequent to the judgment will discharge the other.

5. Where a release is given to a debtor of the United States by the secretary of the treasury, under the provisions of the act of 2d March, 1831 [4 Stat. 467], it has the same effect and is subject to the same legal consequences as an ordinary release from a creditor to a debtor.

[Cited in brief in Walker v. Com., 18 Grat. (Va.) 23.]

6. Where a joint judgment is rendered against two obligors in favour of the United States, and one of them is subsequently released under the provisions of the act of 2d March, 1831, such release is a sufficient defence under a plea of payment to a scire facias, issued to revive the judgment against the other obligor.

7. Where judgment has been rendered against a defendant who has subsequently conveyed real estate to the plaintiff, he is entitled, under a plea of payment, to a scire facias, issued to revive the original judgment, to a credit for the value of the property at the date of the conveyance.

In the years 1825 and 1826, eight customhouse bonds for the payment of sundry duties were given by Samuel Thompson and Jonah Thompson to the United States of America. The obligors having become insolvent before the respective periods at which the bonds were payable, suits were brought from time to time as each became due. Five of these suits, instituted at August and November sessions, 1827, were brought jointly against Samuel Thompson and Jonah Thompson, and judgments were rendered thereon, generally, on motion of the attorney of the United States, at the respective return days. On the remaining three bonds, separate suits were instituted against each of the obligors, at February, May, and August sessions, 1828, and judgment was rendered on each, sev-

---

1 [Reported by John Gilpin, Esq.]

erally, for the amount of the bond in question. On the 13th December, 1832, Jonah Thompson was released by the secretary of the treasury, under the provisions of the act of congress of the 2d March, 1831, for the relief of insolvent debtors of the United States. At November sessions, 1835, eight writs of scire facias were issued, on the part of the United States, against Samuel Thompson, the present defendant, for the purpose of reviving each of the judgments previously recovered against him, as well jointly with Jonah Thompson, as separately. These writs were all returned "made known" by the marshal, and on the 9th December, the defendant filed in each case a plea of payment, with leave to give the special matter in evidence. The United States replied non solvit, and issues. With the plea the defendant filed the following notice: "Notice is hereby given to the district attorney, that under the plea of payment filed in the several cases above mentioned, of Samuel Thompson, the following special matters will be offered in evidence on the trial of those cases, in support of those pleas, to wit: 1. That the sum of five hundred and forty-eight dollars and ninety-five cents was paid, by the defendant's estate, to the United States, on the 7th July, 1829. 2. That Jonah Thompson, the partner and surety of Samuel Thompson in the bonds in question, was released by the secretary of the treasury on the 13th day of December, in the year 1832, from all liability for the same, and entirely discharged therefrom. 3. That on the 5th January, in the year 1833, by conveyance duly executed by the said Jonah Thompson to Virgil Maxcy, solicitor of the treasury of the United States of America, in trust for the said United States, the said Jonah Thompson conveyed to the said Virgil Maxcy, and he accepted for the said United States, certain real estates situate in the state of New Jersey, of the value of nine thousand two hundred and seventy-one dollars and twenty cents, in part payment of the debt due by the said Samuel and Jonah Thompson to the said United States. 4. That the sum of two thousand dollars was tendered by the said Samuel Thompson to the secretary of the treasury, in payment of whatever balance might be due from the said Samuel to the said United States, and which he is now ready to pay, or any part thereof, should the same be found due to the said United States, after debiting them with the sum paid in money and the value of the land conveyed as aforesaid. By all which premises it is considered by the said Samuel Thompson, that the United States are fully paid whatever he owed them."

On the trial it was agreed, as the same questions of fact and the same pleas existed in each case, that the jury should be considered "to have been duly sworn and empanelled to try all and each of said suits of scire facias, and should render verdicts in all and each of them, according to the law and evi-

dence of the said suits, under the direction of the court, as in other cases."

I. As to the first point embraced in the notice of special matter, it was admitted by the district attorney that the sum of five hundred and forty-eight dollars and ninety-five cents had been paid as stated, and that the defendant was entitled to a credit for that sum.

II. Under the second point, the counsel of the defendant gave in evidence: 1. The records of the court, showing that five of the judgments, to renew which these writs of scire facias issued, were rendered jointly against Samuel Thompson and Jonah Thompson. 2. The record of the proceedings of the commissioners of insolvency, appointed under the provisions of the act of 2d March, 1831, in the matter of the application of Jonah Thompson for the benefit of the provisions for the relief of insolvent debtors of the United States. 3. The warrant of the secretary of the treasury, dated 13th December, 1832, under the seal of the department, issued under the provisions of that act, for the release of Jonah Thompson, which declared that the said secretary "did release the said Jonah Thompson from his debt to the United States," on condition that he should transfer to the United States certain land belonging to him in the state of New Jersey. 4. The deed of conveyance by Jonah Thompson to the United States, of the land in New Jersey, as required by the condition of the release, and dated 5th January, 1833.

III. Under the third point, the counsel of the defendant gave parol evidence of the cost of the land in New Jersey at the time it was purchased by Jonah Thompson, which was the sum stated in the notice. To rebut this, evidence was produced on the part of the United States to show that, subsequent to the purchase, but many years before the release of Jonah Thompson, the land had greatly fallen in value, owing to an irruption of the tide and the entire destruction of the embankments by which it was protected, and that, at the time of the transfer to the United States, it was worth very little indeed.

IV. Under the fourth point no evidence of a tender or acceptance of the sum stated was proved, but merely a conversation between the secretary of the treasury, and Jonah Thompson, relating generally to a proposition on the part of the latter to pay that sum.

Mr. Brashears and C. J. Ingersoll, for defendant.

Though these debts originally arose on joint and several bonds of Samuel and Jonah Thompson, their character is now entirely changed. All the bonds are merged in the judgments; they are of a higher nature than the bonds; the latter are now as if they never existed. What are the judgments? Joint judgments against these two persons. It is a principle of universal law that where two parties are jointly bound, the release of one without the assent of the other, is a release of him also. The distinction of principal and surety does not exist in the case of a joint judgment. As to the release. It is a legal instrument made by an officer authorized by law to make it; by its terms it releases the debt of Jonah Thompson; it therefore releases these judgments as they stand of record. It estops the United States from proceeding under them. As they have no claim against Samuel Thompson except under them, they are estopped from proceeding against him. Another point remains under the plea of payment; that is, the absolute satisfaction of the whole debt by conveying property equal to it in value. This property cost as much as the entire debt; no price is fixed in the deed of conveyance, but proof of the cost was given before the commissioners of insolvency; the fair inference is, that it was taken by the United States at that price. Sugd. Vend. 235; Gow. Partn. 225; 5 Bac. Abr. 702; Minor v. Mechanics' Bank, 1 Pet. [26 U. S.] 46; Willings v. Consequa [Case No. 17,767]; Griffith v. Chew, 8 Serg. & R. 17; Milliken v. Brown, 1 Rawle, 391; Beidman v. Vanderslice, 2 Rawle, 334; Cocks v. Nash, 9 Bing. 341.

Mr. Gilpin, for the United States.

These are debts of Samuel Thompson; his notice admits that Jonah Thompson is merely a surety. He also could have had a release by complying with the laws; but he now seeks it without such compliance. He has made no payment in fact, but he asks a credit as if he had. Two questions, therefore, arise: 1. Is Samuel Thompson released from these judgments. 2. Has he paid them in whole or in part.

1. The argument of his counsel, which asserts that the bonds are merged in the judgments, must admit that this release of Jonah Thompson cannot apply to the three cases of the separate judgments against Samuel alone. But as to the others; the joint judgments rendered on the joint and several bonds; it does not affect them. It would not be a release by operation of law on the bonds, for the relation of principal and surety is acknowledged, and the release of the surety, Jonah Thompson, is no release of the principal, Samuel Thompson. It is not a release, by operation of law, on the judgments, for they are still unsatisfied and of record, and if the satisfaction were entered by virtue of the release, it would be a mere satisfaction as to Jonah Thompson. But suppose this act of the secretary of the treasury would have amounted to a release of Samuel Thompson, if it were a release at common law voluntarily made; yet it will not be attended with the same effect, when merely made under the limited power of a statute, and by a party who has no control over the debt, except so far as that statute gives him one. This is not a general release; it is a release of a person who performs certain preliminary acts which the law requires; Samuel Thompson has performed none of these; consequently

he cannot claim the privilege of one who has. The rules applicable to releases at common law have never been extended to those authorised by statute. But suppose this act of the secretary of the treasury operates to release Samuel Thompson; it is ipso facto illegal; it is beyond his authority; he had no right to do any such act; his power was limited to releasing persons who performed the necessary preliminary conditions; if he has done more, the United States are not to suffer by the illegal act of their officer. 5 Bac. Abr. 683; Kirby v. Taylor, 6 Johns. Ch. 242; Creager v. Brengle, 5 Har. & J. 234; Hollingsworth's Adm'x v. Floyd, 2 Har. & G. 87; Powell v. Smith, 8 Johns. 249; Sharpe v. Speckenagle, 3 Serg. & R. 464; Browne v. Carr, 7 Bing. 508; Langdale v. Parry, 2 Dowl. & R. 337; U. S. v. Kirkpatrick. 9 Wheat. [22 U. S.] 720; Locke v. Postmaster General [Case No. 8,441].

2. There has been no payment by Samuel Thompson except the sum admitted. The transfer of the land by Jonah Thompson is merely a personal condition for his own discharge. Besides, it is a conveyance of real estate; that is no payment until the land is sold; assignees would not be chargeable with real estate before it was sold; the United States cannot be charged with a certain sum until that sum is ascertained by a sale. But if an allowance is to be made. any value except that at the time of transfer would be manifestly unjust.

HOPKINSON, District Judge (charging jury). This is a very singular case in some of its aspects, and it is difficult to find any principle which will carry us through every part of it. I hope, however, that we shall be able to come at its substantial justice consistently with the rules of law. We shall make the attempt truly and faithfully, and if we shall fall into any errors, they may be corrected on a future and more deliberate revision by this or another court. There are eight suits and issues on trial before you. You will take them all into your consideration, and give verdicts upon them separately, as the evidence and law applied to each case shall warrant. The cause arises from certain writs of scire facias, issued by the United States, to revive certain judgments obtained by them in this court against defendant. The original suits in which these judgments were obtained, were brought on certain bonds given to the United States by the defendants, Samuel Thompson and Jonah Thompson, for duties on imported goods. They were joint and several bonds. Against the demand of the United States, now on trial, the defendant can avail himself only of such matters of defence as have occurred since the judgments were rendered against him. As to any defence in his knowledge antecedent to the judgments. it was his duty to have pleaded it before the judgment was entered. The defence now set up is within this limitation.

It is two fold: 1. He claims an entire discharge from the whole demand or debt. 2. He claims certain credits or payments.

On the 13th December, 1832, the secretary of the treasury, by virtue of an act of congress passed on the 2d March. 1831. executed a release to Jonah Thompson, on certain terms and conditions. This release is of the debt due by Jonah Thompson to the United States. On the 5th January. 1833. Jonah Thompson conveyed to the United States certain lands in the state of New Jersey, which conveyance was one of the conditions precedent to the operation of the release. On the 24th January, 1833, there was a certificate that the conveyance was made. All these proceedings were subsequent to the date of the judgments, now under consideration on the plea of payment by the defendant, and of course, he has a right to the benefit of them to maintain his plea, so far as they will avail him for that purpose. It is on these acts and proceedings that he founds the two points of his defence, to wit: 1. That the release of Jonah Thompson operates as a release to him, Samuel Thompson. 2. That he, the present defendant, has a right to a credit against these judgments, for the property conveyed by Jonah Thompson, to the United States. The amount of this credit, and at what price or value the land should be charged to the United States, are a secondary inquiry.

I. On the. first point, that is, the effect of the release, I am of opinion, that when two persons are bound jointly, or jointly and severally. in an obligation, the release of one of them. will discharge the other. Such is the principle of the law. But how does it apply to this case? If the bonds, which were the original evidence of debt, the ground and cause of action in the first suits, and which were joint and several obligations. were now on trial against one or both of the obligors, and a release could be shown of either of them, it would acquit the other. The cause of action would be the bonds; they would be an essential, indispensable part of the evidence of the plaintiff's case; they would be produced here and we should judicially know that they were joint and several obligations, and that the recovery of the money due by them. was the object of the suit; of course any matter of defence which took away the right of recovery, would have its full effect. But such is not the case we have to try and decide. This suit is not on a bond of any description. We do not know what the bond was, or that any bond constituted the evidence of debt between these parties. We are referred to our own records for the cause of action in this suit; we find that it is a judgment duly rendered and recorded in favour of the present plaintiff, against the present defendant. In this judgment the original cause of action and the defences which the defendant may have against it, are merged and lost. The counsel for the defendant has told you that we cannot look behind it. The judgment

has become the debt, and the release of a debt, which was subsequent to the judgment, has no relation back to the antecedent contract or cause of action. It existed no longer. Then the question presents itself, how is the release of a judgment, or a debt of any kind due from Jonah Thompson individually, to be applied to a debt or judgment due from Samuel Thompson? I am of opinion, that on the trial of a scire facias to revive a joint judgment against two or more defendants, a release given to one of them, subsequent to the judgment, will be a sufficient defence and discharge of the others; but that if the judgment on which the scire facias issued, be not against all the parties to the original joint and several obligation, but against one of them only, then he cannot, on the trial of the scire facias, avail himself of a release given to his co-obligors in the original contract, subsequent to the judgment. We can look only to the judgment as the plaintiff's cause of action; we find that judgment standing against the defendant alone, and we cannot know that it was rendered on a joint and several bond, or on any other obligation than that of the defendant himself. If I were to allow myself to look beyond the judgment to the proceedings which led to it, I should find, even there, nothing to inform me that the suit was brought and the judgment given on a bond executed by this defendant and another, as co-obligors. The declaration sets out no such matter; it recites simply a bond executed by Samuel Thompson to the United States, for a certain sum; and the judgment has affirmed that Samuel Thompson, and no other person, is indebted to the United States by virtue of that bond.

The district attorney has argued, that whatever may be the effect of the release of one of two joint obligors, in a contract in an ordinary case between man and man, yet that this rule or principle cannot be applied to this case; that this is a special proceeding under the provisions of an act of congress; that this release has been executed by the secretary of the treasury, by the authority and under the directions of that act; that its extent and operation must be governed by the act; that it is clear that the act contemplated and intended only the discharge of the petitioning debtor, who offers to perform and does perform the conditions imposed upon him by the law, as the price of his liberation; that all these are personal in their nature and effect, and were never meant to be extended beyond the petitioning debtor, and to give another debtor the whole benefit of the law, who does not comply with any one of the conditions required by it, nor even ask for it. I do not deny, that there is force in this argument; certainly it is very plausible. It does not, however, at present appear to me to be sufficiently clear and conclusive to overthrow a settled principle of the law, or to show that this is an exception from it. It may be worthy of a future consideration. I will

briefly state the reasons of the opinion I now entertain of it. The act of congress enacts, that an insolvent debtor of the United States may make application to the secretary of the treasury "for the purpose of obtaining a release or discharge from the said debt." The secretary, after receiving the report of the commissioners of the circumstances of the case, and being satisfied that the petitioner has complied with the conditions of the act, is authorised to compromise with the debtor upon such terms as he shall think reasonable, and thereupon he "may execute a release to him for the amount of the said debt." The same term, release, is repeated several times in the law, without any limitation or explanation of its meaning. By this authority the secretary, on the petition of Jonah Thompson, did execute a release to him, in which he says: "I do decide to release him, the said Jonah Thompson, from the said debt." We have then an act of congress, and a treasury act, which, we must presume, was drawn with great care, either by the law officer of the government, or under his supervision. In this act a term is used which, in the courts of law, has a fixed and definite meaning. It is strictly technical, with a settled and determinate construction. Can I then say that congress, in using the term "release," did not intend to give it the same meaning and effect, with all its legal consequences, which have always been given to it? Could it have been expected that the courts of law, finding this term in an act of congress, without any restriction or qualification, would not understand it to have the same meaning, the same force and effect, there as in any other written instrument in which it might be employed? When the secretary says he releases the debtor, why is not his release to have the same operation as any other release, by any other person? If any thing else was intended, it would have been declared and specified, as is done in the insolvent laws of Pennsylvania, which, from that of 1729 down to the latest, have contained an express provision "that the discharge of the debtor by virtue of the act, shall not acquit any other person from any debt," but that "all other persons shall be answerable for the same, in the same manner as before the passing of the act." With these views of the question, I must consider the release of the secretary of the treasury to have the same effect and legal consequences with a similar instrument made and executed by any other person.

As regards the law of this case, for which you will look to the court for instruction, while I cannot say that it is clear of difficulty, you will, in your deliberations, take it to be: 1. That a release given to a debtor of the United States, by the secretary of the treasury under the provisions of the act of March, 1831, is of the same effect and subject to the same legal consequences, as an ordinary release from a creditor to a debtor. 2. That when a suit or trial is founded on a

judgment rendered against the defendant, we may not inquire whether that judgment was given on an obligation or contract made by the defendant with another person; and that, if we might make the inquiry, we could not go out of the record of the action in which the judgment was given, and seek for the information in the evidence, to wit, the obligation or contract on which it was obtained. This, in fact, would be to try the original cause again, and to revise the judgment given in it. The application of the law to the cases before you brings you to this result: That as to the five cases in which the original judgments were rendered against Samuel Thompson and Jonah Thompson, the release of Jonah discharges also Samuel; and in those cases your verdict ought to be for the defendant. That as to the other three cases, in which the judgments were rendered against Samuel alone, and in which Jonah does not appear by the record to have been a party, your verdict should be for the United States, for so much as shall be due upon a consideration of the other matters of defence in proof before you.

II. The credits claimed consist of alleged payments: 1. In money, the sum of five hundred and forty-eight dollars and ninety-five cents, which is admitted and allowed. 2. The lands in New Jersey conveyed by Jonah Thompson to the United States. A credit for this property is not denied, but the question is about the amount. This is for you to decide, taking the rule of law for your guide. The defendant asserts that he is to be allowed a credit to the amount which Jonah Thompson paid for the land. On the other side it is contended, that the value of the property at the time it was transferred by Jonah, as a payment, pro tanto, of his debt to the United States, is the full amount of the credit that should be allowed for it. I have no difficulty in adopting the latter rule; even if the lands at the time of their transfer to the United States had been in the same situation as when they were purchased by Jonah Thompson. Until the transfer, the United States had no interest in them, and then their interest was to the amount of the value of the property and no more. The fluctuation in the prices of real estate is immense and every purchaser takes it at its value at the time of his purchase. This transfer of land is pleaded as a payment. Was it a payment for what it cost six years before, or for what it is actually worth to the creditor who takes it as a payment? How much of his debt will it pay? But the case is infinitely stronger here. By an accident, by the violence of the elements, after the purchase by Jonah Thompson, and long before his conveyance to the United States, the value of the land is changed, is almost wholly destroyed and lost. Is it then to be charged to a creditor, who takes it for a debt, at the value it held antecedent to this destruction? A piece of land of little value may have upon it mills or factories erected at a monstrous expense, and its price would be accordingly. They are destroyed by flood or fire, and afterwards the land is assigned to a creditor, can it be imagined that he should be charged with it at its value before this loss. So the embankment of this meadow constituted its value; the banks are swept away and the value proportionably reduced. It seems to be needless to illustrate a proposition so clear; and I should have left it to you without a word if it had not been so earnestly pressed upon by the counsel of the defendant. It has been further insisted, that if you should not take the value at the time of Jonah Thompson's purchase, you should at least go back as far as his insolvency, when the United States acquired a right in the property. In the first place, this insolvency was subsequent to the destruction of the banks of this meadow. But if it were not so, the insolvency of Jonah Thompson did not pass the property of this land to the United States; it gave no title to it; they could not sell it or take possession of it, or exercise any act of ownership over it. His insolvency gave them a preference over his other creditors, to be paid from the proceeds of his property, but no specific right or title to the property. The defendant should be allowed a credit for the value of these lands, at the time of their conveyance to the United States, of which you will judge from the evidence you have heard. The five judgments affected by the release will be put out of the case; and against the three remaining judgments you will allow a credit for the five hundred and forty-eight dollars and ninety-five cents, and the value of the lands at the time of their transfer to the United States.

The jury found verdicts for the United States in the cases arising under the three original judgments rendered against Samuel Thompson alone. and in favour of the defendant in the five remaining cases.